IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ARMANDO GONZALEZ, et al., § | |
| § | |
| Plaintiffs, § | |
| § | Civil Action No. 3:12-CV-1131-D |
| VS. § | |
| § | |
| U.S. BANK NATIONAL § | |
| ASSOCIATION AS TRUSTEE FOR § | |
| RASC 2004KS12, § | |
| BY AND THROUGH ITS SERVICER- § | |
| IN-FACT, GMAC MORTGAGE, LLC, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

Defendant U.S. Bank National Association, as Trustee for RASC 2004KS12 ("U.S. Bank"), moves for summary judgment dismissing the claims of plaintiffs Armando Gonzalez ("Armando") and Angelina Gonzalez (the "Gonzalezes"). For the reasons that follow, the court grants the motion and dismisses this action by judgment filed today.

I

In October 2004 the Gonzalezes refinanced their homestead, executing a note for $96,000 in favor of Homecomings Financial Network, Inc. (now U.S. Bank) and a deed of trust for the benefit of Mortgage Electronic Registration Systems, Inc., as nominee.[1]  At

---

[1] In recounting the factual background, the court summarizes the evidence in the light most favorable to the Gonzalezes as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

closing, the Gonzalezes executed an Affidavit of Fair Market Value of Homestead Property ("Affidavit of FMV") that stated that, "[o]n the date of the closing, the fair market value of the Property is $120,000.00." D. App. 23. A box was checked on the Affidavit of FMV stating "[t]he fair market value stated above is the value placed on the Property in an appraisal conducted by WELLS, CHRISTINA." *Id.* In December 2011 U.S. Bank attempted to foreclose on the Gonzalezes' residence.

The Gonzalezes sued U.S. Bank in state court alleging that, pursuant to Tex. Const. Ann. art. XVI, § 50(a)(6)(Q)(x), U.S. Bank forfeited all principal and interest because the loan violated certain provisions of the Texas Constitution regarding home equity loans, *see* Tex. Const. Ann. art. XVI, § 50(a)(6). They asserted that U.S. Bank failed to correct these violations within a reasonable time after the date it was notified. The Gonzalezes alleged the following two violations: (1) the principal balance of the loan was greater than 80% of the home's fair market value, *see* § 50(a)(6)(B); and (2) the fees for the loan exceeded 3% of the loan amount, *see* § 50(a)(6)(E). They seek, *inter alia*, damages and a declaratory judgment in accordance with Tex. Const. Ann. art. XVI, §§ 50(a)(6)(Q)(x) and (c) that the deed of trust and lien asserted against their property are not valid, that U.S. Bank has forfeited all principal and interest owed on their property, that they are no longer obligated to remit payments to U.S. Bank, and that the note and deed of trust on their property are null and void. U.S. Bank removed the case to this court and now seeks summary judgment dismissing all of the Gonzalezes' claims.

II

Because U.S. Bank is moving for summary judgment on claims as to which the Gonzalezes will bear the burden of proof at trial,[2] it can obtain summary judgment as to the claim in question by pointing the court to the absence of evidence on any essential element of the claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the Gonzalezes must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the Gonzalezes on the claim in question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Gonzalezes' failure to produce proof as to any essential element of the claim renders all other facts regarding that claim immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment for U.S. Bank is mandatory as to the claim in question if the Gonzalezes fail to meet this burden. *Little*, 37 F.3d at 1076.[3]

---

[2]The Gonzalezes have the burden of establishing that the constitutional violations regarding their home equity loan occurred. *See In re Chambers*, 419 B.R. 652, 671 (Bankr. E.D. Tex. 2009) (citing *Wilson v. Aames Capital Corp.*, 2007 WL 3072054, at *1 (Tex. App. Oct. 23, 2007, no pet.) (mem. op.) (rejecting contention that home equity lender had burden of proof to demonstrate it satisfied § 50(a)(6)(A)-(Q)).

[3]U.S. Bank also asserts the affirmative defenses of estoppel and limitations. *See, e.g.*, *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 640 (5th Cir. 2007) (noting that quasi-estoppel is an affirmative defense and can be raised by a general plea of estoppel) (citing *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 88 n.5 (Tex. App. 2004, no pet.)); *Elmo v. Oak Farms Dairy*, 2008 WL 2200265, at *1 (N.D. Tex. May 14, 2008) (Fitzwater, C.J.) ("Under Texas law, limitations is an affirmative defense on which the

III

The Gonzalezes allege that the home equity loan violates § 50(a)(6)(B) because the loan was greater than 80% of the home's fair market value. Section 50(a)(6)(B) provides that a Texas homestead is

> protected from forced sale . . . except for . . . an extension of credit that . . . is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made.

*Id.*; *see also Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 837 (Tex. App. 2008, no pet.) (quoting § 50(a)(6)(B)).

U.S. Bank contends that the amount loaned to the Gonzalezes did not exceed 80% of the home's fair market value. It posits that, according to the Affidavit of FMV, the fair market value of the property on the date in question was $120,000, and, according to the note, the loan was authorized for 80% of the fair market value: $96,000. U.S. Bank also maintains that, under § 50(h), it can conclusively rely on the Affidavit of FMV for the fair market value. Section 50(h) states:

---

movant bears the burden of proof." (citing *Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 867 (Tex. App. 1997, no writ))). When a party moves for summary judgment on a defense for which it will bear the burden of proof at trial, the moving party "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Because the court is dismissing the Gonzalezes' claims on other grounds, it need not reach the affirmative defenses of quasi-estoppel or limitations.

> [a] lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:
> (1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and
> (2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.

§ 50(h). U.S. Bank argues that the requirements in § 50(h) are satisfied because the Affidavit of FMV was prepared in accordance with a state or federal requirement applicable to an extension of credit under § 50(a)(6) and there is no evidence U.S. Bank had any actual knowledge that the fair market value stated in the Affidavit of FMV was incorrect.

The Gonzalezes do not dispute that they signed the Affidavit of FMV. Instead, they maintain that there is a disputed issue of material fact regarding the market value of the property because Armando's affidavit "states that in his opinion as the owner of the property, the fair market value of the property in 2004 was $110,750." P. Br. 3. In addition, the Gonzalezes attach official records from the Dallas Central Appraisal District (the "DCAD Tax Appraisal") showing a market value in 2004 of $110,750. They also contend that, under § 50(h)(2), U.S. Bank cannot rely on the Affidavit of FMV because U.S. Bank had knowledge of the DCAD Tax Appraisal.[4]

---

[4]The Gonzalezes also argue that U.S. Bank cannot rely on § 50(h) because § 50(h) provides "an affirmative defense not supported by [U.S. Bank's] answer." P. Br. 6. They provide no support, however, for the proposition that § 50(h) is an affirmative defense that

Beginning with the DCAD Tax Appraisal, courts in this circuit that have considered similar arguments have rejected them. *See Poswalk v. GMAC Mortg., LLC*, 2012 WL 2193982, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.), *appeal docketed*, No. 12-10752 (5th Cir. July 17, 2012). In *Penrod v. Bank of New York Mellon*, 824 F.Supp.2d 754 (S.D. Tex. 2011), the court held that an appraisal from a public appraisal district was "relevant to valuation for taxation purposes only," and that "[i]t does not establish market value." *Id*. at 760; *see also Hous. Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686 (Tex. Civ. App. 1977, writ ref'd n.r.e .) ("[I]t is generally held that the value placed upon real property for the purposes of taxation by assessment without participation of the landowner is not evidence of its value for purposes other than taxation." (citing cases)).

Armando's unsubstantiated and conclusory opinion is likewise insufficient to raise a genuine fact issue. Under Texas law, a property owner is qualified to testify to property value. But "while the Property Owner Rule establishes that an owner is *qualified* to testify to property value, [the Supreme Court of Texas] insist[s] that the testimony meet the 'same requirements as any other opinion evidence.'" *Natural Gas Pipeline Co. of Am. v. Justiss*, ___ S.W.3d ___, 2012 WL 6214635, at *5 (Tex. Dec. 14, 2012) (emphasis in original) (quoting *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)). "[A]n expert's testimony is conclusory as a matter of law if he 'simply state[s] a conclusion without any explanation.'" *Id.* (second brackets in original) (quoting *Arkoma Basin Exploration Co. v. FMF Assocs.*

---

is waived if not asserted, and the provision itself supports no such reading. Accordingly, the court rejects this argument.

*1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008)). And Armando's testimony is conclusory and unsupported. He states only the following opinion in his affidavit: "In my opinion as the owner, the fair market value of the property . . . on October 29, 2004 was $110,750.00." P. App. 3. This opinion is "conclusory as a matter of law" and therefore insufficient to raise a genuine fact issue.

Accordingly, the court grants summary judgment dismissing plaintiffs' claim under § 50(a)(6)(B).[5]

IV

Plaintiffs bring a claim under § 50(a)(6)(E), alleging that the fees on the loan exceeded 3% of the loan amount. Section 50(a)(6)(E) provides that a Texas homestead is

> protected from forced sale . . . except for . . . an extension of credit that . . . does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit.

*Id.*; *see also Penrod*, 824 F.Supp.2d at 760 & n.49 (quoting § 50(a)(6)(E)).

U.S. Bank contends that, according to the HUD-1 Settlement Statement, plaintiffs were charged $1,871.11 in fees, which is well under 3% of the $96,000 loan. Accordingly, U.S. Bank argues the loan documents conclusively show that the loan did not violate

---

[5]Because the court has decided this claim in U.S. Bank's favor, it need not reach the argument that plaintiffs are precluded under quasi-estoppel from disputing the Affidavit of FMV or the argument that plaintiffs' claims are barred by the statute of limitations.

§ 50(a)(6)(E)'s 3% fee limitation. Further, because the Gonzalezes executed documents acknowledging and affirming that the fees shown on the HUD-1 Settlement Statement were the only fees charged, U.S. Bank argues that no genuine dispute exists and it is entitled to summary judgment on plaintiffs' § 50(a)(6)(E) claim.

The Gonzalezes offer no argument or evidence in response. Because they have failed to create a genuine issue of material fact, the court holds that U.S. Bank is entitled to summary judgment dismissing their claim under § 50(a)(6)(E).

V

The Gonzalezes allege that, under § 50(a)(6)(Q)(x), U.S. Bank forfeited all principal and interest owed on the loan because of its alleged violations and its failure to cure them, and they seek a declaratory judgment on this basis. Under § 50(a)(6)(Q)(x), a "lender forfeits all principal and interest [owed on a loan] if it fails to comply with the constitutional requirements and fails to correct its noncompliance not later than the sixtieth day after the borrower notifies the lender of the violation." *Smith v. JPMorgan Chase Bank, Nat'l Ass'n*, 825 F.Supp.2d 859, 863 (S.D. Tex. 2011) (citing § 50(a)(6)(Q)(x)). "[A] void home equity lien may be made valid upon proper cure." *Id.*; *see also Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342, 345-46 (Tex. 2001) (answering certified questions from Fifth Circuit) ("[W]e conclude that section 50(a)(6)(Q)(x) is a cure provision that applies to all of section 50(a) and is not limited to protecting the loan's principal and interest. Rather, this provision also operates as a cure provision that validates a lien securing a section 50(a)(6) extension of credit."). Because the court has dismissed the Gonzalezes' asserted constitutional violations,

which are predicates for this claim, their claim under § 50(a)(6)(Q)(x) also fails. *See Penrod*, 824 F.Supp.2d at 764 (holding that because court dismissed alleged violations of Texas Home Equity Amendment, plaintiffs' argument that defendant failed to cure also lacked merit). The court also declines, in its discretion, to address the Gonzalezes' request for a declaratory judgment, because it has dismissed all of their claims.[6]

The Gonzalezes also seek a declaratory judgment that, in accordance with Tex. Const. Ann. art. XVI, § 50(c), the deed of trust and lien claimed on their property are invalid because they do not secure a debt described by § 50. Section 50(c) provides that "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section." As with the Gonzalezes' § 50(a)(6)(Q)(x) claim, because the court has dismissed the constitutional predicates for a claim under § 50(c), it also dismisses the § 50(c) claim itself and declines, in its discretion, to address their request for declaratory

---

[6]The federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural only[.]") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). A declaratory judgment action is merely a vehicle that allows a party to obtain "an early adjudication of an actual controversy" arising under other substantive law. *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990). Federal courts have broad discretion to grant or refuse declaratory judgment. *See, e.g., Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The DJA is "an authorization, not a command." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *Id.* (collecting cases).

judgment.

* * *

For the reasons explained, the court grants U.S. Bank's November 20, 2012 motion for summary judgment and dismisses this suit with prejudice by judgment filed today.

**SO ORDERED.**

February 20, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE